```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | | |
|---|---|---|
| JERRY G. CARRINGTON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-1264-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
|     Defendant. | ) | |

**ORDER REMANDING CASE PURSUANT TO 42 U.S.C. § 405(g)**

Before the court is plaintiff Jerry G. Carrington's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. On January 1, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9.) For the reasons set forth below, the decision of the Commissioner is remanded.

### I.     PROCEDURAL HISTORY

---

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed. Therefore, she is named in the in the caption to this case. As of the date of this order, the Acting Commissioner of Social Security is Nancy A. Berryhill.

On January 16, 2013, Carrington applied for disability benefits under Title II of the Act. (R. at 148, 158.) Carrington alleged disability beginning on June 12, 2012, due to neck and back injuries from a motor vehicle accident, depression, anxiety, bipolar disorder, posttraumatic stress disorder, and hypertension. (R. at 158, 162.) Carrington's last date insured was December 31, 2016. (R. at 10, 150.) The Social Security Administration ("SSA") denied Carrington's application initially and upon reconsideration. (R. at 79, 84.) At Carrington's request, a hearing was held before an Administrative Law Judge ("ALJ") on October 27, 2014. (R. at 25.) On December 3, 2014, the ALJ issued a decision denying Carrington's request for benefits after finding that Carrington was not under a disability because he retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. at 10–24.) On September 25, 2015, the SSA's Appeals Council denied Carrington's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on November 3, 3015, Carrington filed the instant action. (ECF No. 1.) Carrington argues that (1) the ALJ erred when weighing the opinions of the medical sources involved in this case; (2) the ALJ erred when finding that Carrington's testimony was not entirely credible; (3) the ALJ

-2-

used an incorrect standard to assess three of Carrington's medical conditions; (4) the ALJ erred when making the RFC determination; and (5) on a whole, the ALJ's decision was not supported by substantial evidence. (ECF No. 13 at 11–21.)

**II. CONCLUSIONS OF LAW**

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v.

Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B. The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d

1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not

disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Weighing Medical Source Opinions**

ALJs employ a "sliding scale of deference" for medical opinions depending upon the opinion's source. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). They consider both the qualifications of the medical source and the nature of that source's relationship with the claimant. Regarding qualifications, opinions from acceptable medical sources, such as licensed physicians and psychologists, tend to merit more deference than opinions from other medical sources, such as therapists. 20 C.F.R. §§ 404.1502; 404.1527. For the nature of the relationship with the claimant, ALJs look at the depth of interaction:

> An opinion from a treating physician is "accorded the most deference by the SSA" because of the "ongoing treatment relationship" between the patient and the opining physician. A non-treating source, who physically examines the patient "but does not have, or did not have an ongoing treatment relationship with" the patient, falls next along the continuum. A non-

-7-

> examining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference.

Norris, 461 F. App'x at 439 (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted).

When considering what weight to give an opinion from a medical source, ALJs apply a set of factors to the opinion. Those factors include the length and nature of the relationship, the frequency of exams, the evidence upon which the medical source bases her or his opinion, the opinion's consistency with the record as a whole, whether the source has specialized in her or his area of practice, and any other relevant factor, like the source's familiarity with the claimant's full medical record. 20 C.F.R. § 404.1527(c)(2)–(6).

1. Assessment of Dana Williams's Opinion

Carrington argues that the ALJ erred by giving insufficient weight to the opinion of his treating therapist, Dana Williams, M.S. According to Carrington's records, Williams treated Carrington from December 4, 2012, to September 5, 2014. (R. at 237, 417.) Williams met with Carrington 14 times for sessions that ranged in length from half an hour to an hour. (R. at 237, 347–62, 417–73.) Over the course of the treatment, Carrington discussed his chronic depression, short temper, struggles with sleep, struggles with finding effective medication, and fear of

-8-

driving. (Id.) In her treatment notes, Williams consistently described Carrington as having an appropriate appearance and actively engaging in the sessions. (Id.) However, she also documented his mood as depressed or anxious and described his behavior as isolating or impulsive. (Id.) Williams assigned Carrington a global assessment functioning ("GAF") score of 40. (R. at 237.) Later in his treatment, other mental health care providers assigned him a GAF score of 70. (R. at 414, 442, 466, 485, 508, 519.)

On October 28, 2014, Williams filled out a Social Security assessment form in which she evaluated Carrington's ability to perform work related activities. (R. at 544–46.) On this form, there were ten questions regarding the claimant's ability to understand, remember, and carry out instructions and interact appropriately with others. (Id.) In response to all ten questions, Williams indicated Carrington was extremely limited in his ability to function. (Id.) She further stated that he "cannot think and concentrate for any length of time," "overreacts," is "extremely nervous and agitated all the time, "has frequent panic attacks," "has very poor social skills," "does not leave the house," and has "extreme medical problems." (Id.)

The ALJ gave Williams's opinion little weight on the grounds that Williams was not a medical professional, did not

appear to be qualified to render the opinion she rendered, and had opined that Carrington was far more limited than the evidence in his medical record indicated. (R. at 13.) Carrington contests that the ALJ improperly weighed Williams's opinion, because the ALJ did not apply all of the factors 20 C.F.R. § 404.1527 requires of ALJs assessing treating sources.

Therapists are not acceptable medical sources, so their opinions are not entitled to controlling weight. See 20 C.F.R. §§ 404.1502(a), 404.1513(a); SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). When considering what weight to give a therapist's opinion, the ALJ employs the same factors used for analyzing an acceptable treating source's opinion and applies whatever factors are relevant to the opinion. 20 C.F.R. § 404.1527(f)(1). After considering all the pertinent factors, if the ALJ determines that the opinion might impact the outcome of the case, then the ALJ must explain the weight given to the treating therapist's opinion in a fashion that "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2).

The court agrees with the ALJ's conclusion that, due to the "evidence [of] only intermittent symptoms" and "mild limitations," the extreme limitations Williams tendered are not consistent with the medical evidence on the record. (R. at 13.) As the ALJ noted further on, proof of Carrington's functionality

appears in his testimony and medical records, which indicated that he performed household tasks, spent time with others on the phone and in person, attended church, and benefited from "conservative medications." (R. at 14, 18.) Further contradicting Williams's assessment, Carrington consistently received a GAF score of 70 — a score that demonstrates his symptoms were mild at worst. (R. at 14, 215, 222, 285, 325, 337, 414, 442, 466, 485, 508, 519.) Thus, the court affirms the ALJ's decision to give Williams's opinion little weight.

    2.   <u>Assessment of the State Reviewers' Opinions Versus the Independent Medical Examiner's Opinion</u>

Among Carrington's arguments about the ALJ's evaluation of the various medical source opinions in his records, Carrington propounds that the ALJ should not have given more weight to the opinions of the non-examining state reviewers than to Carrington's independent medical examiner, John B. Woods, M.D. (ECF No. 13 at 14.)

Four different non-examining state reviewers opined on Carrington's condition: George Livingston, Ph.D., on April 2, 2013; Jacito DeBorja, M.D., on April 30, 2013; James Gregory, M.D., on July 27, 2013; and Jenaan Khaleeli on August, 7, 2013. (R. at 61–62, 71, 73.) Dr. DeBorja gave great weight to the opinion of examiner Jennifer Johnson, M.D., from March 18, 2013, and concluded that Carrington had less severe neck and back pain

than he claimed. (R. at 60.) Dr. Livingston opined that Carrington's mental condition mildly restricted his daily living, social functioning, and concentration. (R. at 62.) Dr. Gregory also gave great weight to Dr. Johnson's opinion, and concluded that Carrington had less severe neck and back pain than he claimed. (R. at 71.) Dr. Khaleeli's opinion mirrored Dr. Livingston's. (R. at 73.)

Dr. Woods met with Carrington on October 15, 2014. (R. at 533.) He noted that Carrington was alert and cooperative. (R. at 534.) Dr. Woods found no irregularities with Carrington's HEENT, lungs, neck, cardiovascular system, skin, abdomen, extremities, or neurological system. (Id.) However, during the musculoskeletal exam, Dr. Woods observed "moderately decreased range of motion" in Carrington's left shoulder. (R. at 535.) He further noted that Carrington had a hard time raising his left arm above his head, had "motor strength [of] 4+/5 in the left upper extremity," had a reduced left grip, and had "mildly decreased cervical flexion and extension and left lateral flexion." (Id.) The remainder of the musculoskeletal exam was "unremarkable." (Id.)

Dr. Woods then opined that Carrington could carry ten pounds occasionally and less than ten pounds frequently, could stand or walk for six hours out of an eight-hour work day, could sit without impairment, had limitations pushing or pulling, had

occasional postural limitations for actions like climbing and stooping, had occasional manipulative limitations, and had environmental limitations.  (R. at 536–39.)  He concluded that these limitations would impede Carrington's ability to focus during a full work day and "permanently impair" him from "gainful employment."  (R. at 532, 539.)

In the ALJ's opinion, the ALJ mentioned that Dr. Livingston and Dr. Khaleeli found that Carrington's mental condition caused him mild limitations, but the ALJ did not assign a weight to either of these opinions.  (R. at 13.)  The ALJ made no mention of Dr. DeBorja's or Dr. Gregory's opinions.  However the ALJ did find that the opinion upon which the two state reviewers relied — Dr. Johnson's opinion — merited little weight because it was inconsistent with the results of a later radiological test performed on December 11, 2013.  (R. at 17, 399–400.)  The ALJ gave little weight to Dr. Woods's opinion on the grounds that Dr. Woods was not a treating source, did not have access to Carrington's full medical records, did not quantify several of the restrictions, and provided an assessment that was inconsistent with his own examination.  (R. at 17.)

An ALJ "may not ignore" the opinion of non-treating or non-examining acceptable medical sources and must "explain the weight given" to these opinions if there is no controlling treating source opinion.  SSR 96-6P, 1996 WL 374180, at *2 (July

2, 1996); 20 C.F.R. § 404.1527(e). Unlike with treating sources, ALJs may state that they are discounting the opinion of a non-treating or non-examining medical source without giving a good reason as to why. See Norris, 461 F. App'x at 439. However, the Sixth Circuit has carved out an exception to this exemption for instances when an ALJ gives more weight to the opinion of a non-examining source than to later opinions from other sources who typically merit more deference. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 834 (6th Cir. 2016). In the event that a "non-examining source did not review a complete case record, '[the Sixth Circuit] require[s] some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from the non-examining source" than to the opinion of a treating or examining source. Id. (quoting Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009)).

In this case, the ALJ did not specify what weight the ALJ gave the state reviewer's opinions. As a result, it is not apparent to what extent the ALJ relied upon these opinions, much less whether the ALJ complied with Miller by considering that these reviewers did not have access to later medical records that other opining sources had.[2] The need for the ALJ to

---

[2]The court also notes that there is nothing in the record demonstrating that Dr. Woods had limited access to Carrington's

-14-

identify the weight given to these opinions is especially great when dealing with the opinions of Dr. DeBorja and Dr. Gregory. If the ALJ did rely on the opinions of these two reviewers, then that would create an apparent contradiction in the ALJ's opinion because the ALJ would have relied on opinions built upon Dr. Johnson's opinion — an opinion that the ALJ found merited little weight. In light of the ambiguity in the ALJ's opinion, the court will remand the case so that the ALJ may clarify the weight given to the state examiners' opinions and demonstrate whether the ALJ has taken the date of these opinions into account.

### III. CONCLUSION

For the foregoing reasons, the court reverses the ALJ's decision and remands the case pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 2, 2018
Date

---

medical records. Indeed, Dr. Woods specified that he reviewed Carrington's records. (R. at 532–33.)